

FILED

APR ⁻ 9 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

1

**FOR PUBLICATION**

2

**UNITED STATES BANKRUPTCY COURT**

3

**EASTERN DISTRICT OF CALIFORNIA**

4

5

6

7

8    In re:                          )
                                     )    Case Nos. 09-26167
9    CHARLES W. SILLER and           )              09-26849
     CWS ENTERPRISES, INC.,          )
10                                   )    Docket Control Nos. DD-02
             Debtors.                )                        DD-03
11   _____)

12

13

14

15

16                          OPINION
          ON CROSS-MOTIONS FOR SUMMARY JUDGMENT ON
17                  OBJECTIONS TO CLAIMS

18

19

20

21

22

23   Walter R. Dahl, Dahl & Dahl, Sacramento, California, for
     claimants Cotchett, Pitre & McCarthy and Spiller•McProud
24
     Bradley A. Benbrook, Stevens, O'Connell & Jacobs, LLP,
25   Sacramento, California, for objector David D. Flemmer, Chapter 11
     trustee, CWS Enterprises, Inc.
26
     M. Elaine Hammond, Friedman Dumas & Springwater LLP, San
27   Francisco, California, for objector Charles W. Siller, Chapter 11
     Debtor-in-Possession
28

KLEIN, Bankruptcy Judge:


This case evokes an adage:  Hell hath no fury like lawyers stiffed on $12 million in fees.  Two of five law firms that represented the debtor in a thirteen-year corporate dissolution fight won a fee arbitration award that a state court confirmed. The debtor, saddled with the confirmed arbitration award that by then exceeded $12 million and facing other attorneys demanding $6 million in fees, invoked chapter 11 and objected under 28 U.S.C. § 502(b)(4) to the confirmed fee arbitration award as exceeding "the reasonable value of such services."

The question on summary judgment is whether the confirmed arbitration award is either claim preclusive or issue preclusive of a § 502(b)(4) claim objection in light of the Full Faith and Credit Statute, 28 U.S.C. § 1738.  The answer is that the award is not claim preclusive; nor, after probing the arbitration decision to determine what was actually litigated and necessarily decided, is it issue preclusive on the question of reasonable value.  Hence, there remains for trial a genuine issue of material fact regarding the reasonable value of the services.


<u>Facts</u>

These facts taken from the summary judgment record are being assessed in the light most favorable to nonmoving parties.

Charles W. Siller prosecuted litigation to dissolve Siller Brothers, Inc., of which he owned 40 percent.  The litigation began in 1994, led to a $45.7 million judgment in Siller's favor in 2006, and was settled on appeal in 2007 for $10 million cash

and $20.5 million in property to be transferred by way of a tax-advantaged "Section 355 spinoff" that required Siller to create CWS Enterprises, Inc. ("CWS"), which he owns.

By the time the settlement transaction closed, Siller was represented by his fifth attorney and faced cumulative legal bills exceeding $18 million.

From 2001 through the 2006 trial and the 2007 negotiation of the settlement, Siller was represented by Frank M. Pitre of Cotchett, Pitre & McCarthy on a fee agreement providing for a 28 percent contingent fee and for arbitration of fee disputes by Judicial Arbitration Mediation Services ("JAMS").  In mid-2004, Siller hired Steven T. Spiller of Spiller•McProud to assist him and Pitre under an additional 8 percent contingent fee agreement that incorporated the terms of Pitre's agreement.

After Pitre and Spiller won the $45.7 million judgment and negotiated the Section 355 spinoff settlement through the judicial mediation program of the California Third District Court of Appeal, Siller tried to renegotiate their contingent fee agreements.  When Pitre and Spiller declined to reduce their fees, Siller discharged them.

Pitre and Spiller permitted the settlement transaction to close over their attorney's liens after Siller executed deeds of trust and a promissory note in favor of their firms for a sum "undetermined but not to exceed $13,000,000.00."

Pitre and Spiller jointly demanded JAMS arbitration in February 2008.  The assigned arbitrator was a retired California state court judge.  After first resisting arbitration, Siller agreed to participate.  Hearings were conducted on the record on

May 29 and July 7, 2008, at the conclusion of which the evidentiary record was closed.  Post-hearing briefing, including considerable focus on the issue whether CWS was properly a party respondent, was completed on October 30, 2008.

The arbitrator valued the settlement achieved by Pitre and Spiller at $30.5 million, accepted the Pitre-Spiller argument that reasonableness of the fees was irrelevant, and treated the matter as purely one of breach of contract.  Finding unexcused breach, he awarded the full contractual contingency fees as damages to Pitre and Spiller jointly and severally against Siller and CWS.  After various adjustments, Pitre's base award was $8,370,701.81 and Spiller's was $2,284,519.16, to which was added prejudgment interest at 10 percent through November 25, 2008, together with costs totaling $42,941.35.

A state court confirmed the arbitration award and entered judgment on February 13, 2009, awarding Pitre $9,150,437.90, plus $42,141.35 in costs, and awarding Spiller $2,497,325.07, plus $800.00 in costs.  Each award was subject to 10 percent interest from November 25, 2008, until paid.  Judgment, <u>Frank M. Pitre of</u> <u>Cotchett, Pitre & McCarthy & Steven T. Spiller of Spiller•McProud</u> <u>v. Charles W. Siller & CWS Enters., Inc.</u>, No. CPF-09-509178, Cal. Super. Ct., San Francisco County (Feb. 13, 2009).

On April 10, 2009, Siller and CWS each filed chapter 11 cases.  David Flemmer is chapter 11 trustee in the CWS case. Siller is debtor in possession in his own case.

The law firms of Pitre and of Spiller filed joint claims ("Pitre-Spiller claim") in each case based on the confirmed arbitration award claiming $12,100,679.36 ($11,690,704.32 in

4

1   principal, plus interest of $409,975.04) as of the petition date.

2       Siller and Flemmer objected to the Pitre-Spiller claims,

3   challenging the judgment debt as exceeding the "reasonable value"

4   of services allowable under § 502(b)(4), which disallows each

5   claim for services of an attorney for the debtor "to the extent"

6   that "such claim exceeds the reasonable value of such services."

7       The Spiller-Pitre claimants filed in each case motions

8   titled, in part:  "Motion for Summary Judgment, or in the

9   Alternative Summary Adj[u]dication to Dismiss the Objections of

10  CWS Enterprises, Inc. and Charles Siller to the Claim of

11  Cotchett, Pitre & McCarthy and Spiller•McProud."

12      Flemmer and Siller filed oppositions that included cross-

13  motions for summary judgment.

14      The court announced its ruling from the bench at the end of

15  oral argument and later signed one of the four orders needed to

16  resolve the four motions.  It did not sign the order denying the

17  Pitre-Spiller claimants' motion in the Siller case and did not

18  sign any orders on the Flemmer and Siller cross-motions.

19  Instead, it deferred action because it decided to deny, instead

20  of grant, the Flemmer and Siller motions and issue this opinion.

21      The Pitre-Spiller claimants filed notices of appeal and

22  motions for leave to appeal, attaching <u>unsigned</u> drafts of four

23  civil minute orders, only one of which was later signed and

24  entered.  Three of the four have never been signed or entered.[1]

25

26      [1]It is noted that the motions for leave to appeal represent

27  that true and correct copies of all orders, said to have been
    "entered in this case on March 22, 2010," are attached.  To the

28  contrary, three of the four have never been signed and entered.
    The one that was signed was entered on docket March 23, 2010.

Jurisdiction

Subject-matter jurisdiction is founded on 28 U.S.C. § 1334. An objection to claim is a core proceeding that a bankruptcy judge may hear and determine.  28 U.S.C. § 157(b)(2)(B).

This court has jurisdiction to issue the orders on cross-motions that have not heretofore been signed and entered because any notice of appeal with respect to them is, by definition, premature.  Fed. R. Bankr. P. 8003(b).  This court has plenary jurisdiction to revise, sign, and enter those two orders.

As to the two orders that were signed and entered, the Pitre-Spiller claimants' notices of appeal are ineffective to transfer jurisdiction from this court under the doctrine of exclusive appellate jurisdiction because they are interlocutory orders for which leave to appeal has not been granted.  Rains v. Flinn (In re Rains), 428 F.3d 893, 903-04 (9th Cir. 2005).

In any event, this court has authority to issue this decision with respect to the Pitre-Spiller claimants' motions because it does not materially differ from the ruling announced orally on the record and does not alter or expand the entered orders denying those two motions.  Rains, 428 F.3d at 924; Neary v. Padilla (In re Padilla), 222 F.3d 1184, 1190 (9th Cir. 2000).

Discussion

The ultimate question is whether, accepting the facts in the light most favorable to the nonmoving party, there is a genuine issue of material fact regarding allowance of the Pitre-Spiller claim.  The path to the answer winds through questions of procedure, the nature of § 502(b), the effect of the Full Faith

6

and Credit Statute, and the eligibility of the judgment
confirming the arbitration award for treatment as preclusive.

I

The Pitre-Spiller claimants responded to the objection to
their claim by filing a motion for summary judgment.  In so
doing, they ventured into a procedural swamp.  The Federal Rules
of Bankruptcy Procedure dealing with claims and claim objections
are in disarray and do not provide good maps.

Two fixed points help one find some bearings.  First, claim
objection proceedings are Rule 9014 "contested matters."  Fed. R.
Bankr. P. 9014, adv. comm. note ("the filing of an objection to a
proof of claim, ..., creates a dispute which is a contested
matter").  Second, the summary judgment rule applies in contested
matters.  Fed. R. Civ. P. 56, _incorporated by_ Fed. R. Bankr. P.
7056 & 9014.

The first puzzle is the context in which this summary
judgment motion is made.  One schooled in the Federal Rules of
Civil Procedure would ask about the pleadings and whether there
has been an answer.  But the concept of pleadings is fuzzy in
claim objection matters.

One might think that the proof of claim is the equivalent of
a complaint in an adversary proceeding just as the motion in a
Rule 9014 contested matter is the equivalent of a complaint,
which would make the objection to claim the equivalent of an
answer.  After all, like a complaint, the proof of claim is the
filing in which the creditor asserts what is owed and why.  Also,
like a complaint, the claimant ordinarily has the burden of

proof, which is a substantive matter, because that is where the
burden usually lies regarding the claim under nonbankruptcy law.
Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20-21 (2000)
(burden on taxpayer in tax dispute).  Thus, the creditor's
response to an objection to claim looks like the equivalent of
making a more definite statement.

But, counterintuitively, the objection to claim is what
initiates the Rule 9014 contest and must be served in the manner
of a summons and complaint.  Fed. R. Bankr. P. 9014(b).  Then,
there is the problem of what constitutes the answer.  Under Rule
9014(a), no response is required in a contested matter unless the
court orders an answer.  Fed. R. Bankr. P. 9014(a).

The appropriate solution when an objection to claim is met
with a summary judgment motion is to treat the motion as the
equivalent of a motion under Civil Rule 12(b)(6) that presents
matters outside the pleadings.  Fed. R. Civ. P. 12(d).  If, as
here, it is denied, then the court may require an answer to the
objection, which will be in the nature of a more definite
statement to which the objector would then file a response that
closes the pleadings.

Since, taking the facts in the light most favorable to
nonmoving parties, genuine issues of material fact remain for
trial and hence prevent entry of summary judgment on any of the
motions and cross-motions, an answer to the objection to claim
will, as permitted by Rule 9014(a), be ordered to be filed.  The
objectors then will be directed to file responses that will close
the pleadings.  This will bring the claim objection dispute
within the model of a civil action in federal practice.

## II

The claim for compensation for services by an attorney for the debtor is disallowed in bankruptcy to the extent that it exceeds the reasonable value of such services.

### A

The statutory path begins with Bankruptcy Code § 502, which governs allowance of claims and objections to allowance.  11 U.S.C. § 502.

A filed claim is "deemed allowed" unless a party in interest objects.  11 U.S.C. § 502(a).

If an objection is made to a claim, then the court must determine the amount of the claim and allow it "except to the extent that — "

> (4) if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services[.]

11 U.S.C. § 502(b)(4), <u>redesignated from</u> § 502(b)(5) by Pub. L. 98-353, 98 Stat. 333 (1984).

The legislative history of § 502(b)(4) explains that the provision "prevents overreaching by the debtor's attorneys" and "permits the court to examine the claim of a debtor's attorney independently of any other provision of this subsection [502(b)], and to disallow it to the extent that it exceeds the reasonable value of the attorneys' services."  H.R. Rep. No. 95-595 (1977), at 353; S. Rep. No. 95-989 (1978), at 63.

This limit on allowance of claims to the extent they exceed "reasonable value" of services complements the court's equitable subordination authority, which requires a demonstration of

"inequitable conduct."  11 U.S.C. § 510(c)(1).

B

Section 502(b)(4)'s limitation on allowance of claims for services of insiders and attorneys to those that are within the "reasonable value of such services" is created by federal statute that is consistent with the Supreme Court's observation that "Congress of course may do what it likes with entitlements in bankruptcy."  Raleigh, 530 U.S. at 21.

The § 502(b)(4) limitation is a question of federal law because in it Congress, doing "what it likes with entitlements in bankruptcy," does not refer to state law, "applicable law," or "applicable nonbankruptcy law."  That is, without something in the statute signifying an intent for this federal question to be construed under state law, it is presumed to establish a uniform federal rule in accordance with the power of Congress to legislate "uniform laws on the subject of Bankruptcies throughout the United States."  U.S. CONST. art. I, § 8.

Under Bankruptcy Code § 502(b), a claim for prepetition attorney's fees for counsel for a debtor is, if state law also requires reasonableness in its own attorney's fee structure, subject to two tiers of reasonableness scrutiny.  First, if the claim does not surmount whatever reasonableness standard state law imposes, then it will be disallowed under § 502(b)(1) as being "unenforceable" as not being "reasonable" under "applicable law."  11 U.S.C. § 502(b)(1).  This is consistent with the doctrine that state law governs the substance of claims in bankruptcy "[u]nless some federal interest requires a different

10

result."  Butner v. United States, 440 U.S. 48, 54-55 (1979).

Second, if the claim does satisfy whatever state law of reasonableness may be inherent in establishing the enforceability of the claim (and no such standard applied in this instance), then it must also run the gauntlet of § 502(b)(4) federal reasonableness scrutiny.  Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co., 549 U.S. 443, 550-53 (2007).

Thus, reasonableness analysis has a two-tier, single-elimination aspect to it in the sense that a debtor's attorney's prepetition claim is disallowed if it does not clear both the state law hurdle and the federal § 502(b)(4) hurdle.  Whether the federal law hurdle is higher, the same, or lower than the state law hurdle remains to be determined.  In any event, § 502(b)(4) reasonableness is a federal question that is independent of state laws requiring attorney's fees to be reasonable.

The courts of appeal agree that standards of "reasonable" attorney's fees imposed by § 502(b)(4) and its cousin, § 506(b), are federal law questions independent of state standards. Segovia v. Bach Constr., Inc. (In re Segovia), 346 F. App'x 156, 158 (9th Cir. 2009)(not binding), aff'g 387 B.R. 773 (Bankr. N.D. Cal. 2008) ($726,000 claim reduced to $50,000 under § 502(b)(4)), relying on, Joseph F. Sanson Inv. Co. v. 268 Ltd. (In re 268 Ltd.), 789 F.2d 674, 675-77 (9th Cir. 1986) (§ 506(b)); accord, Landsing Diversified Props.-II v. First Nat'l Bank & Trust Co. (In re W. Real Estate Fund, Inc.), 922 F.2d 592, 597 (10th Cir. 1991) (11 U.S.C. § 502(b)(4)); Blackburn-Bliss Trust v. Hudson Shipbuilders, Inc. (In re Hudson Shipbuilders, Inc.), 794 F.2d 1051, 1056-58 (5th Cir. 1986) (§ 506(b)).

In this instance, the state law hurdle did not include a reasonableness element because the arbitrator agreed with the Pitre-Spiller claimants that the issue sounded solely in breach of contract regarding a contingency fee agreement, which as a matter of California law may be enforced even though the contingent fee exceeds a "reasonable" fee under state law. Hence, § 502(b)(4) "reasonableness" is the only analysis of that nature that will be applied in this case.

C

The burden of proof regarding § 502(b)(4) "reasonable value" of services of an insider or attorney of the debtor poses another puzzle. The Bankruptcy Code and Federal Rules of Bankruptcy Procedure do not allocate the § 502(b)(4) burden of proof.

There are guideposts. The burden of proof is substantive, not procedural. And, unless Congress says otherwise, the burden is ordinarily the same in bankruptcy claim litigation as it is under applicable nonbankruptcy law. <u>Raleigh</u>, 530 U.S. at 20-21.

That does not, however, answer the question of the burden of proof where the basis for disallowance is purely a creature of the Bankruptcy Code, and that statute and the rules are silent.

Three factors militate in favor of requiring that the claimant attorney or insider bear the § 502(b)(4) burden of proof on the question of reasonableness of compensation for services.

First, all applicants for awards of professional compensation to be paid by the estate bear the burden of proof on the essential elements of "reasonable compensation." 11 U.S.C. § 330; <u>e.g.</u>, <u>Woods v. City Nat'l Bank & Trust Co.</u>, 312 U.S. 262,

12

268 (1941); <u>Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.</u>, 924 F.2d 955, 958 (9th Cir. 1991); <u>In re Gianulias</u>, 111 B.R. 867, 869 (E.D. Cal. 1989), <u>aff'g</u> 98 B.R. 27 (Bankr. E.D. Cal. 1989).  There is no reason to suggest that "reasonable value of services" under § 502(b)(4) should be different.

Second, creditors filing proofs of claim usually bear the ultimate substantive burden of proof on the validity of their claims.  <u>Raleigh</u>, 530 U.S. at 21 ("the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it").  As § 502(b)(4) involves only the allowance of a claim, there is no reason why the substantive burden should be different.

Third, the particularized disallowance under § 502(b)(4) of claims for services of debtors' attorneys and other insiders is a manifestation and expansion of the rule of <u>Pepper v. Litton</u> that insider dealings with a debtor are "subjected to rigorous scrutiny" and that the burden is on the insider "not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the [debtor] and those interested therein."  <u>Pepper v. Litton</u>, 308 U.S. 295, 306 (1939); <u>Brewer v. Erwin & Erwin, P.C. (In re Marquam Inv. Corp.)</u>, 942 F.2d 1462, 1465-66 (9th Cir. 1991).

Indeed, the legislative history of the 1978 Bankruptcy Code is explicit that <u>Pepper v. Litton</u> and related cases retain vitality under the Code as the basis for § 510(c).  The House Report named the leading equitable subordination cases.[2]  The

_____

[2]The House Report describes the equitable subordination provision of § 510 as:

final floor statements emphasized that "principles of equitable

subordination" in § 510(c) were intended to follow "existing case

law."[3]  Thus, the rule of <u>Pepper v. Litton</u> is perpetuated in the

_____

        Subsection (b) [enacted as (c)] permits the court to
subordinate, on equitable grounds, all or any part of an
allowed claim or interest to all or any part of another
allowed claim or interest, and permits the court to order
that any lien securing [a] claim subordinated under this
provision be transferred to the estate.  This section is
intended to codify case law, such as <u>Pepper v. Litton</u>, 308
U.S. 295 (1939), and <u>Taylor v. Standard Gas and Electric
Co.</u>, 306 U.S. 307 (1938), and is not intended to limit the
court's power in any way.  The bankruptcy court will remain
a court of equity, proposed 28 U.S.C. 1481; <u>Local Loan v.
Hunt</u>, 292 U.S. 234, 240 (1934).  Nor does this subsection
preclude a bankruptcy court from completely disallowing a
claim in appropriate circumstances.  <u>See Pepper v. Litton,
supra</u>.  The court's power is broader than the general
doctrine of equitable subordination, and encompasses
subordination on any equitable grounds.

H.R. Rep. No. 95-595, at 359 (1977) (footnotes omitted).

        [3]The floor leaders' statements describing the Bankruptcy
Code as finally enacted explain § 510(c)(1) as follows:

        Section 510(c)(1) of the House amendment represents a
compromise between similar provisions in the House bill and
Senate amendment.  After notice and a hearing, the court
may, under principles of equitable subordination,
subordinate for purposes of distribution all or part of an
allowed claim to all or part of another allowed claim or all
or part of an allowed interest to all or part of another
allowed interest.  As a matter of equity, it is reasonable
that a court subordinate claims to claims and interests to
interests.  It is <u>intended that the term "principles of
equitable subordination" follow existing case law</u> and leave
to the courts development of this principle.  To date, under
existing law, a claim is generally subordinated only if
[the] holder of such claim is guilty of inequitable conduct,
or the claim itself is of a status susceptible to
subordination, such as a penalty or a claim for damages
arising from the purchase or sale of a security of the
debtor.  The fact that such a claim may be secured is of no
consequence to the issue of subordination.  However, it is
inconceivable that the status of a claim as a secured claim
could ever be grounds for justifying equitable

Bankruptcy Code.

It is also apparent that <u>Pepper v. Litton</u> inspired § 502(b)(4), which is a broader rule in two senses and a narrower rule in another respect.  It applies more broadly to all attorneys for the debtor and to all insiders, not merely to officers, directors, and dominant or controlling shareholders. Nor is inequitable conduct required.  It is narrower in the sense that it applies only to claims for services.

With respect to the § 502(b)(4) burden of proof, the import of <u>Pepper v. Litton</u>, as the Supreme Court only recently reminded us, is that <u>Pepper v. Litton</u> places the burden of proof on the insider who would defend validity of the transaction.  <u>Jones v. Harris Assocs. L.P.</u>, ___ U.S. ___, March 30, 2010, Slip Op. at 10-11.  Since <u>Pepper v. Litton</u> inspired § 502(b)(4), it follows that the burden of proof regarding reasonable value of services is on the insider or attorney who makes the claim.

These various reasons converge into the conclusion that the § 502(b)(4) burden of proof, and correlative risk of

---

subordination.

124 CONG. REC. 32,398 (1978) (Rep. Edwards); 124 CONG. REC. 33,998 (1978) (Sen. DeConcini) (emphasis supplied).

And, in the portion of the floor statements describing the Code's treatment of taxes, § 510(c)(1) is described again:

> Section 510. Subordination:  Since the House amendment authorizes subordination of claims only under principles of equitable subordination, and thus <u>incorporates principles of existing case law</u>, a tax claim would rarely be subordinated under this provision of the bill.

124 CONG. REC. 32,416 (1978) (statement of Rep. Edwards); 124 CONG. REC. 34,016 (1978) (statement of Sen. DeConcini) (emphasis supplied).

nonpersuasion, is allocated to attorneys and insider creditors.

### III

The Pitre-Spiller claimants emphasize that the arbitration award in their favor was confirmed by a state court of competent jurisdiction and contend that the Full Faith and Credit Statute, 28 U.S.C. § 1738, is conclusive of the claim objection because that statute requires that the records of California judicial proceedings "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of" California.  28 U.S.C. § 1738.

It is, of course, correct that the Full Faith and Credit Statute applies in bankruptcy.  Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 824 (9th Cir. BAP 2006), aff'd & adopted, 506 F.3d 956 (9th Cir. 2007); Swift v. Bellucci (In re Bellucci), 119 B.R. 763, 768-69 (Bankr. E.D. Cal. 1990).  A state-court judgment confirming an arbitration award has the same dignity as any other state-court judgment.  Khaligh, 338 B.R. at 824.

Here, a California judgment confirming an arbitration award established, as a matter of California law, that the Pitre-Spiller claimants are entitled to $11,647,762.97, plus $42,941.35 in costs, and 10 percent interest from November 25, 2008, until paid, on account of their contract for attorney's fees.

As a matter of full faith and credit, the judgment confirming the arbitration has three effects in bankruptcy. First, it fixes the amount of the debtors' liability for purposes of § 502(b)(1), which ordinarily honors claims that are

16

1  enforceable under state law against the debtor and property of

2  the debtor.   Second, it renders incontestable the attorney's fee

3  awards made in that judgment to the extent made under state law.

4       Finally, in addition to recognizing that the state-court

5  judgment fixes the amount that the claimants are entitled to

6  recover as a matter of state law and is conclusive as to the

7  substantive entitlement to the award, the Full Faith and Credit

8  Statute requires the bankruptcy court to apply California

9  preclusion law regarding the effect of the judgment confirming

10 the arbitration award.   McDonald v. City of W. Branch, 466 U.S.

11 284, 287 (1984); Harmon v. Kobrin (In re Harmon), 250 F.3d 1240,

12 1245 (9th Cir. 2001); Caldeira v. County of Kauai, 866 F.2d 1175,

13 1178 (9th Cir. 1989); Khaligh, 338 B.R. at 824.

14      The difficulty faced by the Pitre-Spiller claimants here is

15 that federal law imposes other exceptions that operate to qualify

16 § 502(b)(1) claim allowance.   Attorneys for the debtor and

17 insiders must also surmount the federal law hurdle established by

18 § 502(b)(4) to demonstrate that the claim for prepetition

19 services does not exceed the reasonable value of the services.

20 11 U.S.C. § 502(b)(4).   In addition, for the sake of

21 completeness, there is a theoretical potential for § 510(c)(1)

22 equitable subordination.

23      As a matter of the Supremacy Clause, and regardless of the

24 state preclusion law, the state-court judgment based on state law

25 cannot trump the specific provision in Bankruptcy Code

26 § 502(b)(4).   U.S. CONST. art. VI, § 2.   Rather, the situation is

27 the opposite, and § 502(b)(4) preempts state law to the extent

28 that state law permits claims on account of prepetition services

17

1  rendered by an insider or attorney for an insider to exceed the
2  reasonable value of services.

3      In short, the Full Faith and Credit Statute requires that
4  the bankruptcy court recognize the state-court judgment as fixing
5  the amount of the debtor's liability, treat the attorney's fees
6  incontestable on state-law grounds, and apply the state's rules
7  of res judicata in determining the preclusive effect of its
8  judgment.  The Full Faith and Credit Statute must, however, also
9  be construed so as to honor the Supremacy Clause.

10

11                                IV

12      The claimants next contend that the confirmed arbitration
13  award is conclusive of § 502(b)(4) reasonable value of services
14  under res judicata rules of claim and issue preclusion.

15      In principle, an issue important to a federal law question
16  may be resolved in a prior state-court litigation.  Thus, for
17  example, state-court determinations regarding essential elements
18  of. fraud may be given issue preclusive effect in bankruptcy
19  nondischargeability litigation under Bankruptcy Code § 523(a)(2)
20  to the extent the respective essential elements overlap.  11
21  U.S.C. § 523(a)(2); Grogan v. Garner, 498 U.S. 279, 284-85
22  (1991), citing RESTATEMENT (SECOND) OF JUDGMENTS §§ 27-28.

23      As a California judgment provides the basis for the asserted
24  preclusion, full faith and credit requires resort to California
25  preclusion law.  Khaligh, 338 B.R. at 823 (California law).

26      California preclusion law generally comports with the
27  Restatement (Second) of Judgments.  7 B.E. WITKIN, CALIFORNIA
28  PROCEDURE: JUDGMENT §§ 336-43 (5th ed. 2008) ("WITKIN").

                                18

1    In California, preclusion is an affirmative matter not

2  jurisdictional in nature that must be raised in the trial court

3  by the proponent of preclusion, who bears the risk of

4  nonpersuasion.   7 WITKIN §§ 335 & 348.

5    The analysis of preclusion by a trial court under the

6  rules of res judicata is a two-step process.   First, the court

7  determines whether, as a matter of law, preclusion is available

8  to be applied; then, if preclusion is available as a matter of

9  law, then the court exercises discretion whether to impose

10  preclusion under the facts of the case.  Robi v. Five Platters,

11  838 F.2d 318, 321 (9th Cir. 1988); Khaligh, 506 F.3d 956,

12  adopting 338 B.R. at 823 (California law); George v. City of

13  Morro Bay (In re George), 318 B.R. 729, 733 (9th Cir. BAP 2004),

14  aff'd, 144 F. App'x 636 (9th Cir. 2005), cert. denied, 546 U.S.

15  1094 (2006).   The extent of the court's discretion not to apply

16  preclusion appears to be narrower and more controversial in

17  California than in federal jurisprudence, but it turns out that

18  makes no difference to this case.   7 WITKIN §§ 344-46.

19

20                                   A

21    Claim preclusion is categorically not available with respect

22  to § 502(b)(4) objections to claim.   In California, claim

23  preclusion requires that there be a valid and final judgment

24  between the same parties or persons in privity with them

25  regarding a single "primary right."   7 WITKIN §§ 305 & 402.

26    The California concept of "primary right" is different and

27  narrower than the Restatement's transactional approach under the

28  Restatement (Second) of Judgments.   7 WITKIN §§ 408-09; RESTATEMENT

19

(SECOND) OF JUDGMENTS § 24.

The judgment confirming the Pitre-Spiller arbitration award satisfies the initial requirement that there be a valid and final judgment between the same parties regarding the right to attorney's fees.

Under basic principles of merger as enforced by the rule concerning claim splitting, a valid and final judgment for the plaintiff merges the claim in the judgment in a manner that extinguishes the claim and leaves only a right of action on the judgment.    7 WITKIN §§ 401 & 406; RESTATEMENT (SECOND) OF JUDGMENTS §§ 17-18 & 24.

In this case, the Pitre-Spiller claimants' rights were established in the valid, final judgment awarding them damages in arbitration confirmation proceedings.    Hence, they now are entitled only to a right of action on their money judgment, and Siller is foreclosed from raising matters that could and should have been raised in the initial litigation.

In a functional sense, the prosecution of a proof of claim is in the nature of an action on the money judgment.    If the only pertinent claim allowance provision of the Bankruptcy Code were § 502(b)(1), then there would be no contest.

The Pitre-Spiller claimants' claim preclusion theory, however, collapses in the face of § 502(b)(4) and the requirement that the same "primary right" be involved, as would also be the case under the Restatement's transactional approach.    This federal statute limiting allowable claims for attorney's fees to the "reasonable value" of the attorney's services could not have been raised in the arbitration or ensuing judicial confirmation

20

because the issue was neither ripe nor justiciable at the time
the California judgment was rendered.  Indeed, it was an issue
that did not exist until Siller filed his bankruptcy case.

Under the California requirement that the claims involve the
same "primary right," the § 502(b)(4) limitation does not involve
the same "primary right" as the Pitre-Spiller fee contract.  The
"primary right" involved in the arbitration and confirmation
proceeding was the enforcement of fee contracts subject to state
law.  The "primary right" involved in enforcing the § 502(b)(4)
limitation is the federal interest of assuring equitable
distribution of assets in a collective proceeding.  Thus, under
California preclusion law, the judgment does not dictate the
result under § 502(b)(4).

There is no doubt that the Pitre-Spiller claimants have a
claim for the $12,100,679.36 amount of their judgment and that
Siller is precluded from contesting the validity of the judgment
debt.  The open question, which was not and could not have been
resolved in the prebankruptcy proceedings, is how much of that
claim is allowable under the § 502(b)(4) "reasonable value" of
services restriction on the allowance of claims.

It follows that the state court judgment confirming the
arbitration award is not claim preclusive of the § 502(b)(4)
federal question of reasonable value of services.

B

The conclusion that the judgment confirming the arbitration
award is not claim preclusive of § 502(b)(4) brings the analysis
to the claimants' contention that the judgment confirming the

21

arbitration award is issue preclusive on the issue of reasonable value of services.  Here, the claimants' theory runs up against three independently-fatal obstacles:  not an issue necessarily decided; not an issue actually decided; and estoppel of inconsistent positions.

One need not be distracted by nomenclature.  "Issue preclusion" is the term under the Restatement (Second) of Judgments, while many California courts still use "collateral estoppel" for concepts entirely subsumed by claim preclusion. 7 WITKIN § 413.  As used in this decision, the terms are synonyms.

In a second action between the same parties on a different cause of action, the first judgment is a conclusive adjudication of any issue actually litigated and necessarily decided. RESTATEMENT (SECOND) OF JUDGMENTS § 27; 7 WITKIN § 413.  They are collaterally estopped or precluded from relitigating the issue. This proposition lies at the core of the Pitre-Spiller claimants' summary judgment motion.

This case satisfies neither the "necessarily decided" requirement nor the "actually litigated" requirement.

The first difficulty with application of the "necessarily decided" facet of issue preclusion is that case law has not yet resolved the respective parameters of the § 502(b)(4) "reasonable value" of services issue in comparison to state law.  Unlike basic fraud, as to which there is substantial agreement as to the essential elements under state and federal law, the differences between state law of "reasonable" attorney's fees and the federal law of "reasonable value" of services have not been explored in a manner sufficient to be confident that a "reasonable" fee under

22

state law necessarily reflects the "reasonable value" of services under § 502(b)(4).

Moreover, the § 502(b)(4) issue of "reasonable value" of services could not have been actually litigated as it did not exist between the parties at the time of the prior litigation and could neither have been actually litigated nor decided.

Finally, there is an estoppel problem.  The Pitre-Spiller claimants successfully resisted Siller's effort to defend the arbitration on the basis that the fees were not "reasonable." Citing the California Supreme Court's decision <u>Ketchum v. Moses</u>, 24 Cal.4th 1122, 1132 (2001), which noted that a contingent fee contract may provide for more compensation that otherwise would be reasonable, they contended, and the arbitrator agreed, that reasonableness of fees is irrelevant to the breach of contract theory on which they chose to ground their case.  Having successfully squelched Siller's effort to litigate reasonableness before the arbitrator, they now contend that the confirmed arbitration award establishes that their fees are reasonable.

California deals with the problem of asserting inconsistent positions that would make a mockery of tribunals by imposing estoppel.  7 WITKIN §§ 339-40.

California estoppel of inconsistent positions relies on the same five factors that apply in federal practice:  (1) the party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party successfully asserted the first position in that the first tribunal adopted the position or accepted it as true; (4) the two positions are entirely inconsistent; and (5) the first position

was not taken as a result of ignorance, fraud, or mistake. <u>Jackson v. Los Angeles</u>, 60 Cal. App. 4th 171, 183 (Ct. App. 1997); 7 WITKIN § 339; <u>accord</u>, <u>New Hampshire v. Maine</u>, 532 U.S. 742, 750-51 (2001); <u>Hamilton v. State Farm Fire & Cas. Co.</u>, 270 F.3d 778, 780 (9th Cir. 2001); <u>Alary Corp. v. Sims (In re Associated Vintage Group, Inc.)</u>, 283 B.R. 549, 566 (9th Cir. BAP 2002). All five factors apply in this case.

The only factor worthy of further comment is whether an arbitrator qualifies as a prior tribunal for purposes of estoppel of inconsistent positions. California permits issue preclusion to be based on an arbitration that is adjudicatory in nature. <u>Khaligh</u>, 338 B.R. at 829-30. There is no persuasive reason why an arbitration adjudicatory in nature should be viewed differently than the quasi-judicial administrative proceeding on which an estoppel can be based. Moreover, once the state court confirmed the arbitration award, the proceeding morphed into a judicial proceeding for purposes of estoppel. Accordingly, the estoppel of inconsistent positions may be based on a position taken and accepted or adopted during an arbitration.

Thus, even if reasonableness of attorney's fees under California law is probative of reasonable value of services under § 502(b)(4), that analysis can have no application in this case because the claimants are estopped from asserting that their fees are reasonable under California law.

V

At the conclusion of oral argument, the court announced its intention to grant the Flemmer and Siller cross-motions for

24

1  summary judgment.  Upon more careful reflection, the court

2  realizes that those motions seek no affirmative relief.  Rather,

3  they merely ask for denial of the Pitre-Spiller claimants'

4  motions.  As no useful purpose in this litigation would be served

5  by granting the motions, orders will be issued denying them.

6

7                              ***

8      In sum, neither the Full Faith and Credit Statute nor any

9  theory of preclusion prevents the determination in this court of

10  the fact-intensive § 502(b)(4) question of the reasonable value

11  of the prepetition services rendered by the Pitre-Spiller

12  claimants in their role as attorneys for Siller.  As the question

13  of § 502(b)(4) "reasonable value" of services is, by its nature,

14  fact-intensive, it is poorly suited to summary judgment.

15      The four motions, including the two cross-motions, are being

16  denied because genuine issues of material fact regarding

17  § 502(b)(4) "reasonable value" of services remain for trial.

18      The parties are reminded that it would be a mistake to infer

19  that the court's perception of genuine issues of material fact

20  preventing summary judgment in any way intimates a view about the

21  ultimate merits of the cases of the respective contestants

22  regarding the "reasonable value" of the Pitre-Spiller services.

23      Orders denying the Pitre-Spiller claimants' motion in the

24  Siller case and denying the cross-motions in both the Siller and

25  CWS cases will now be entered.

26

27  Dated:  April 9, 2010

                    _____
28                  UNITED STATES BANKRUPTCY JUDGE

                              25

## CERTIFICATE OF SERVICE

On the date indicated below, I served a true and correct copy(ies) of the attached document by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed and by depositing said envelope in the United States mail or by placing said copy(ies) into an interoffice delivery receptacle located in the Clerk's Office.

Randy Michelson
150 Spear St #1600
San Francisco, CA 94105

Dahl & Dahl
2304 N Street
Sacramento, CA 95816-5716

Estela O. Pino
Pino & Assoc.
800 Howe Ave., #420
Sacramento, CA 95825

Andrea T. Porter
Friedman Dumas & Springwater LLP
150 Spear Street, #1600
San Francisco, CA 94105

Dennis Hauser
P.O. Box 1397
Woodbridge, CA 95258

Howard Nevins
Hefner, Stark & Marois
2150 River Plaza Dr., #450
Sacramento, CA 95833

Daniel L. Egan
400 Capitol Mall, 22nd Fl.
Sacramento, CA 95814-4421

Russell J. Austin
304 S Street
Sacramento, CA 95811

Edward Freidberg, Esq.
601 University Ave., #274
Sacramento, CA 95825

Randy E. Thomas
P.O. Box 717
Woodbridge, CA 95258

David D. Flemmer
2804 Gateway Oaks Dr., #120
Sacramento, CA 95833

Charles W. Siller
1220 Whyler road
Yuba City, CA 95591

Bradley A. Benbrook
Stevens & O'Connell LLP
400 Capitol Mall #1400
Sacramento, CA 95814


Dated:   4/12/10

DEPUTY CLERK

**BARBARA REYNOLDS**